

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

August 20, 1949

Hon. C. C. Chessher, Chairman
State Board of Education
Austin, Texas

Opinion No. V-888

Re: Authority of present State
Board of Education to make
textbook adoption under sub-
mitted facts.

Dear Sir:

        We refer to your recent inquiry concerning the author-
ity and duty of the present existing State Board of Education (in view
of the provisions of Senate Bills Nos. 115 and 116, enacted by the 51st
Legislature) to proceed with and make textbook adoptions on Novem-
ber 14, 1949, under the existing textbook laws. We quote your two
submitted questions:

        "1. Is the State Board of Education authoriz-
        ed to continue with plans for making a textbook adop-
        tion the second Monday in November, 1949, which in-
        cludes the appointment of a State Textbook Commit-
        tee, authorization of their expenses, issuing instruc-
        tions to them, setting a date for their meeting, issu-
        ing a proclamation calling for bids on textbooks, and
        doing all the other customary things necessary to
        comply with the existing statutes in making a text-
        book adoption.

        "2. Is is the mandatory duty of the State Board
        of Education to issue a proclamation, give notice of
        the same as provided by existing laws, and make an
        adoption of free textbooks on November 14, 1949?"

        Section 1 of Article II of Senate Bill 115, Acts of the
51st Legislature, as amended by H.B. 964, Acts of the 51st Legisla-
ture, provides for the creation of an elective State Board of Educa-
tion to consist of twenty-one members. Sections 2 and 3 thereof
authorize and prescribe the procedure to be followed in a special
election to be held on the second Tuesday in November, 1949, at

which shall be elected the initial membership of this first elective State Board, which membership shall hold office until January 1, 1951. Section 4 thereof reads in part:

> "The term of office of the initial members of the State Board of Education elected in the aforesaid election . . . shall begin upon certification by the Secretary of State of the results of said election. Each member . . . shall subscribe to the official oath of office, and give bond in the amount of . . . ($10,000) payable to the Governor of the State of Texas, conditioned upon the faithful performance of his duties, said bond to be filed with the State Comptroller."

Section 3 of Article VII of S. B. 115 reads in part:

> "The State Board of Education, as heretofore established by law, is hereby terminated and abolished <u>as of the date of the qualification of the members of the State Board of Education herein provided</u> . . . " (Emphasis added)

Under Section 4 of Article II quoted, the term of office of the initial members of the elective State Board will begin on certification of election results by the Secretary of State of the election required to be held on November 8, 1949. Section 3 of H.B. 964 provides that the returns shall be canvassed by the Secretary of State as provided in Article 3034.[1] The Secretary of State, under Article 3034, V.C.S., may canvass the returns of said election and certify the results thereof "on the fifteenth day after the election, the day of election excluded." Article 3035 requires that:

> "When the returns have been counted, the Governor shall immediately make out, sign and deliver a certificate of election . . . to the per-

---

1/ This provision of H.B. 964 amends the provisions of S.B. 115. Section 3 of Article II of S.B. 115 provided that the returns should be made to the Secretary of State within 5 days after the election and that the Secretary of State shall, <u>within 15 days</u> after the election, canvass the returns.

sons who shall have received the highest num-
ber of votes for each . . . of said offices."

Thus, the earliest possible beginning date of the
terms of office of the initial members of the elective Board of
Education would be November 23, 1949, that being the day when
the Secretary of State may canvass and certify the results of the
election.

Since Section 3 of Article VII of S.B. 115, above quot-
ed, provides that the present appointive Board of Education is
abolished "as of the date of the qualification of the members" of
the elective State Board, it follows that the present appointive
Board shall continue in office and perform the duties attendant
upon that office until supplanted by the elective Board, as provid-
ed by law.

It should be noted also that Section 8 of Article II of
S.B. 115, as amended, requires that a meeting of the initial Board
members elected shall be called by the Secretary of State within
ten (10) days after said election returns have been canvassed, or
as soon as practicable thereafter. Until such meeting is called
and the members meet in official session, no business could be
consummated by the new elective Board. The section, however,
would have no effect on those provisions of the Act which provide
for the abolishment of the appointive Board.

The present appointive Board, therefore, having auth-
ority to act until its abolishment becomes effective, has the power
to perform all those duties prescribed by existing laws necessary
to carry out the purpose and complete plan of the textbook laws,
Article 2742 to 2876j, V.C.S., as amended.

Article 2842 provides in part:

"It shall be the duty of the State Board of
Education . . . to meet annually on the second
Monday in November, and at such other times
as it may be called together by the Chairman for
the purpose of considering the advisability of con-
tinuing or discontinuing, at the expiration of each
current contract, any or all of the State adopted
textboooks in use in the public schools of Texas,

and of making such adoptions as are provided
for in Articles 2843, 2844, and 2844a . . . as
amended . . ."

Article 2846 provides in part:

"When texts are to be selected and adopt-
ed under the provisions of this law, or where a
contract for a text then in use is about to expire,
the chairman of the Commission (State Board of
Education) shall, two months in advance of the
meeting of the Commission at which time the
adoption may be made, give public notice by
having printed in the public press a notice to
the effect that such meeting will be held and that
adoptions will be made, and by sending written
notices to all persons, firms or corporations in
whose behalf such notices shall have been re-
quested. . . ."

See attached Attorney General's Opinion No. 0-5477
as modified by Opinion No. 0-6231.

We are informed in your letter that several contracts
for textbooks expire on August 31, 1950, and it becomes necessary
for the State Board on November 14, 1949, to extend such contracts
or to enter into new contracts covering books in the same subject
fields. Further, you advise that it has been the custom of the
State Board to have the Textbook Committee meet two weeks prior
to the date of adoption to formulate its report to the State Board
on textbooks submitted for adoption. Such meeting this year would
be held on October 31, prior to the adoption date of November 14,
1949. As hereinafter stated, the question of whether expiring con-
tracts should be renewed or new contracts entered into in Novem-
ber 1949 is within the discretion of your Board.

Article 2675b-5, subsection f., provides in part:

"The State Board of Education shall ap-
point annually a Textbook Committee to be com-
posed of nine members each of whom shall be
an experienced educator engaged in the public

schools of Texas. . . .

"It shall be the duty of the Committee to examine all books submitted for adoption and make its recommendation in writing to the State Board of Education relative to the teachable value of books in the grades and subjects for which they have been submitted. The Textbook Committee shall hold its meetings where and when the State Board of Education shall determine and shall receive the same compensation as the members of the State Board of Education as provided for in Section 10 of this Act."

Article 2675b-5, Subsection f (S.B. 148, Chap. 144, Acts 49th Legislature, R.S. 1945), providing for a Textbook Committee is still in effect, unless superseded by Article IV of S.B. 115, 51st Legislature.

Section 1 of Article IV reads:

"There is hereby created a State Textbook Committee to replace the present textbook committee created by Senate Bill No. 148, Chapter 144, Acts of the 49th Legislature, Regular Session, 1945, with duties herein provided."

Section 2 of Article IV provides:

"The State Commissioner of Education, as hereinafter created, annually at the meeting of the State Board held on the first Monday in May shall recommend to the State Board the names of fifteen (15) persons, . . . for appointment to the Textbook Committee for a term of one (1) year."

Section 3 of Article IV reads in part:

"The State Board shall approve or reject said nominations; and if any names shall be rejected the Commissioner shall nominate

> others until there shall be selected fifteen
> (15) persons, . . . who shall be named by the
> State Board of Education to membership on
> the Textbook Committee."

As previously reasoned herein, there can be no elective State Board of Education created under S B. 115, as amended, prior to November 23, 1949. We think Sections 2 and 3 of Article IV, above quoted, are intended to provide an appointive State Textbook Committee for assistance to the elective Board of Education created by the Gilmer-Aikin laws in textbook selections. Section 2 specifically requires that the names of recommended appointees for such Committee shall be presented to the State Board on the first Monday in May. Article IV of S.B. 115 contemplates the creation of a State Textbook Committee at the time and in the manner therein provided, to replace the Textbook Committee now authorized under Article 2675b-5, subsection f. Until such time, it is apparent that the present committee is authorized to act under the presently existing laws.

We are advised that it has been the practice of the present State Board of Education to discharge the Textbook Committee appointed by it under authority of Article 2675b-5(f), V.C. S., (after acceptance of its textbook recommendations) on the adoption date fixed in Article 2842, the second Monday in November.

Accordingly, we are of the opinion that the State Board of Education is authorized to continue with plans for making a textbook adoption the second Monday in November, 1949, which includes the appointment of a State Textbook Committee, authorization of their expenses, issuing instructions to them, setting a date for their meeting, issuing a proclamation calling for bids on textbooks, and doing all customary things necessary to comply with the existing statutes in making a textbook adoption. However, we do not here pass upon the availability of funds with respect to payment of per diem and expenses of the Textbook Committee or the present Board of Education after August 31, 1949.

Referring now to your second question, the provisions of Articles 2842 and 2846 are mandatory to the extent that they require the present State Board of Education to meet on the second

Monday in November (November 14, 1949) as provided in Article 2842 for the purpose of "considering" the matter therein expressed, and insofar as they require the chairman to give the public notice provided in Article 2846, V.C.S. "where a contract for a text then in use is about to expire." However, it is not mandatorily provided therein that adoptions or renewals be made at that time. The adoption and renewal authority is discretionary. If, after considering the advisability of continuing or discontinuing expiring textbook contracts or of making adoptions, the Board should determine that there exists no necessity for continuing or discontinuing contracts or making adoptions at the November meeting, it is under no mandatory duty at such meeting to continue or discontinue contracts about to expire or to make adoptions as are provided for in the textbook statutes.

But before the Board of Education may act on the continuance or discontinuance of expiring contracts or may make any adoptions of textbooks at its November 14 meeting, there must have been compliance with the public notice provisions of Article 2846. In short, the Board cannot act in matters of adoption at its November 14 meeting unless there has been notice published in accordance with and for the time required in Article 2846.

## SUMMARY

The present appointive State Board of Education is authorized to continue with plans for making textbook adoptions on the second Monday in November, 1949, and to do all the customary things necessary to comply with existing textbook statutes in making a textbook adoption.

The present Board is under a duty to meet on the second Monday in November as provided, and for the purposes expressed, in Article 2842. It is not mandatory, however, that the Board make adoptions or renewals at such meeting, this authority being discretionary. But the Board cannot make adoptions at such November meeting

unless there has been notice published in accordance with and for the time required in Article 2846.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:b:bh:mw

APPROVED

*Price Daniel*

ATTORNEY GENERAL